```
                  UNITED STATES BANKRUPTCY COURT
                FOR THE NORTHERN DISTRICT OF IOWA
                         WESTERN DIVISION


IN RE:

DEAN TIMMERMAN                                       Chapter 7
ANN TIMMERMAN

      Debtors.                            Bankruptcy No. 06-00168S
```

## MOTION TO COMPROMISE DISPUTE RE: ADMINISTRATIVE EXPENSE APPLICATION

Farmers Cooperative Company (hereinafter "Farmers Coop") applied for allowance of an administrative expense. The application requested allowance of a chapter 7 administrative priority expense in the amount of $37,525.00 (doc. 257). The motion was served on all creditors and parties-in-interest with notice of a bar date for objections (doc. 261). Larry S. Eide, the trustee, objected, as did two creditors--American National Bank and Crow's Hybrid Corn Company. The objections initiated a contested matter proceeding, and the matter was scheduled for hearing for October 10, 2007. American National Bank withdrew its objection, and Crow's Hybrid Corn Company has not pursued its objection. On October 9, 2007, the trustee and Gary A. Norton, the attorney for Farmers Coop, notified the court by phone that they had reached a compromise and that they would submit a proposed stipulated order.

On October 23, 2007, Farmers Coop submitted to the court, by electronic mail, a document entitled "Consent Order for Allowance of Costs and Expenses as Chapter 12 Administrative Priority for

Farmers Cooperative Company." Eide, as trustee, and his attorney, Donald H. Molstad, as well as Norton, as attorney for Farmers Coop, subscribed to the proposed order, stating that it was "Stipulated as to Findings of Fact and Consented to as to Form and Content."

The court regarded the proposed order as a stipulation of settlement which should be set for hearing. The hearing was scheduled for November 13, 2007 (doc. 297).

Farmers Coop asked that the hearing be held by telephone (doc. 298). It provided the following rationale for a telephonic hearing:

> All provisions or findings presented in the Consent Order are based directly on evidence submitted to the Court and to all parties [in] interest, and/or based directly on allegations and argument presented in the Claim Motion served on all creditors and/or the Memorandum of Law in Support of Motion for Allowance of Administrative Priority Claim for Farmers Cooperative Company and Application of Facts and Evidence filed by Farmers Cooperative on October 5, 2007, in this matter, served on all parties in interest. On the assumption that the Court is not expecting or requiring evidentiary presentation at such a hearing, a telephonic hearing would be preferred and appropriate in the interest of cost saving and efficiency for the parties.

(Doc. 298, Motion, ¶ 5.)

The court issued an order giving the parties until November 2 to advise the court of any agreement as to the admission of evidence to support the settlement. The order stated that "[t]he court is willing to conduct the hearing by telephone if the parties agree what documents the court may consider with regard

to the stipulation and that there is no need for oral testimony" (doc. 300).

On October 31, 2007, Farmers Coop filed a "Motion for Decision of Motion Based on Stipulation of the Parties" (doc. 305). The motion stated that the "Consent Order [submitted October 23] was intended by the parties to be a stipulation of the relevant facts, as well as a stipulation of the approval of the Claim Motion...." (id., ¶ 2). Attached to the Motion for Decision was a revised Consent Order. Farmers Coop stated that the "Revised Consent Order" was intended to clarify that the parties had stipulated to the findings of fact therein and the approval of the claim motion, with the exception that the administrative expense would be allowed as a chapter 12, not a chapter 7, expense (id., ¶ 5).

The Motion made the following additional assertions and arguments:

> 7. All findings of fact presented in the Revised Consent Order are stipulations of fact between the adverse parties. Such findings are based directly on evidence submitted to the Court and to all parties [in] interest, and/or based directly on allegations and argument presented in the Claim Motion served on all creditors and/or the Memorandum of Law in Support of Motion for Allowance of Administrative Priority Claim for Farmers Cooperative Company and Application of Facts and Evidence filed by Farmers Cooperative Company on October 5, 2007, in this matter, served on all parties in interest, as well as the exhibits filed with the Court attached to the Exhibit List of Farmers Cooperative.
>
> 8. Stipulations by the parties regarding questions of fact are controlling and conclusive. Trial courts are

3

>  bound by the facts established by the stipulation and must enforce them.  Courts cannot make contrary findings.
>
>     9. Farmers Cooperative requests that the Court treat the findings of fact in the Revised Consent Order as a stipulation of facts by the parties and decide whether to grant the Claim Motion based on the stipulation of facts as found in the attached Revised Consent Order, with the Claim Motion treated as amended by further stipulation of Farmers Cooperative that the claim would be subject to the provisions of 11 U.S.C. § 726(b) as a Section 503(b) claim incurred prior to the conversion of the Chapter 12 case to a case under Chapter 7 of the Bankruptcy Code.

(Doc. 305, Motion ¶¶ 7, 8, & 9 (citations omitted).)

The court denied a request in the Motion to continue the hearing (doc. 307).  Hearing on the proposed consent order came before the court on November 13, 2007 in Sioux City.  Donald H. Molstad appeared as attorney for Eide, the trustee; Gary A. Norton appeared as attorney for Farmers Coop.

The court has jurisdiction of this matter under 28 U.S.C. §§ 1334(a) and 157(a) and the District Court's order of reference.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  Farmers Coop's application was filed pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(2).  In my view, the proposed resolution of this contested matter proceeding comes before the court pursuant to Fed.R.Bankr.P. 9019 as a settlement, not as a trial on the merits.

The court has set out in detail the allegations and contentions of the Motion for Decision of Motion Based on the Stipulation of the Parties (doc. 305) because it appears to the

4

court as an attempt to turn the hearing on the trustee's compromise into a trial on the merits of the administrative claim, a trial limited to a stipulation of facts between the trustee and Farmers Coop, a trial with an agreement as to outcome--the granting of Farmers Coop's application.

I, in no way, view it as such. Certainly it is a voluntary agreement between the parties that Farmers Coop's claim be allowed as a chapter 12 administrative expense under 11 U.S.C. § 503(b)(1)(A). But that is the agreement that is before the court for approval. The stipulation that the claim be allowed cannot be binding on the court. Fed.R.Bankr.P. 9019(a) gives the court discretion in approving a trustee's compromise.

A trustee usually seeks approval of a compromise through motion. Fed.R.Bankr.P. 9019(a). The burden is upon the trustee to show by a preponderance of evidence that the compromise is in the best interest of the bankruptcy estate. <u>Velde v. First International Bank & Trust (In re Y-Knot Construction, Inc.</u>), 369 B.R. 405, 408 (B.A.P. 8th Cir. 2007). "The trustee, however, does not need to establish that the proposed settlement is the best possible outcome, but only that it does not fall below the lowest point in the range of reasonableness." <u>Id.</u> (<u>citing</u> <u>Martin v. Cox (In re Martin)</u>, 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997)).

> In assessing the settlement,
>
> the bankruptcy court must consider the evidence in light of the following four factors: (1) the probability of success in the litigation; (2) the

5

> difficulties, if any, the trustee may encounter in collecting on a judgment; (3) the complexity of the litigation and the attendant expense, inconvenience, and delay; and (4) the paramount interest of the creditors and a proper deference to their reasonable views concerning the litigation.

Id. (citing Drexel Burnham Lambert, Inc. v. Flight Transp. Corp. (In re Flight Transp. Corp.), 730 F.2d 1128, 1135 (8th Cir. 1984)).

The court held hearing on the consent order to develop a record with respect to the settlement, not to determine the underlying issues. The court must assess the value of the claim being compromised against the value to the estate of accepting the compromise. In re GHR Companies, Inc., 50 B.R. 925, 931 (Bankr. D. Mass. 1985). "Such a balancing of benefits is had from the receipt of evidence and is not based merely on conclusory statements made by counsel supporting the compromise." Id. "While it is not necessary 'that, in order to avoid a trial, the judge must in effect conduct one,'" the court should include the Drexel Burnham factors in its analysis of a compromise. Id. (citing Weinberger v. Kendrick, 698 F.2d 61 (2d Cir. 1983)).

I recognize that in treating the consent order as a compromise, service of the consent order on all creditors might have been required. Fed.R.Bankr.P. 2002(a)(3). However, the consent order provided no different benefit to Farmers Coop than it originally requested, all creditors received notice of the initial request, and no objecting creditor pursued its objection.

Inasmuch as I may excuse notice of the compromise for cause, I do so now.

As I have indicated, I have characterized the submission of the consent order as a submission of a proposed compromise. Farmers Coop characterizes the consent order as a stipulation of underlying facts and a stipulation as to the outcome. Nowhere, however, do I consider that I was ever informed that the parties were going to trial based on a stipulation of facts and outcome based on those facts.

Moreover, I do not think that the parties are free to impose on the court an outcome based on legal conclusions which they may believe flow from their stipulation and the documents submitted as part of Farmers Coop's application.

Farmers Coop correctly argues that for an administrative expense to be allowed for "actual, necessary costs and expenses of preserving the estate," it must meet a two-part test: (1) the debt must arise from a transaction with the debtor-in-possession, and (2) it must be beneficial to the debtor-in-possession in the operation of the business. White Front Feed & Seed v. State Nat'l Bank (In re Ramaker), 117 B.R. 959, 962 (Bankr. N.D. Iowa 1990) (citing Matter of Jartran, Inc., 732 F.2d 584, 587 (7th Cir. 1984)).

In its motion for allowance of administrative expense, Farmers Coop alleged that prior to Timmermans' filing bankruptcy, they entered into "future delivery of corn contracts" with

Farmers Coop. Attached to the motion were exhibits "A" through "M". Nine contracts were attached as exhibits A-I; a listing of contracts (exhibit J) showed an alleged tenth contract (contract # 16698), described in exhibit L as a "priced" contract.

As to the attached contracts (exhibits A-I), the trustee objected that they were executory contracts at the time Timmermans filed their chapter 12 case. Eide asserted, correctly, that neither Timmermans nor the trustee assumed the executory contracts during the case. They were deemed rejected, after the conversion to chapter 7. Eide denied that any loss would be an administrative claim, but if it were, it would be an administrative claim only in the chapter 12 case. Eide noted that "[s]everal of the Grain Contracts were 'rolled' by the Debtors after the commencement of the Chapter 12 case but before the conversion of this case from Chapter 12 to Chapter 7...." (Doc. 263, Trustee's resistance.)

Under the contracts, Timmermans agreed to the future delivery of corn to Farmers Coop. The contracts were identified as "Basis Later Grain Contracts." Initial contracts were identified by contract number and issue date. In each, Timmermans were sellers and Farmers Coop was the buyer. Under the contracts, Timmermans agreed to produce, sell, and deliver a specific number of bushels of corn for delivery on or before a date certain. (Exhibits A, B, C, D and E; G, H and I at 2-3.)

In the contracts, Timmermans acknowledged that Farmers Coop

8

would enter into future transactions "as a hedge against Buyer's purchase of the Grain."  Timmermans agreed to terms relating to "Cash Basis" and the calculation of the "Final Purchase Price" (id.).  Timmermans also acknowledged that the final purchase price was not determined as of the date of the contract, and could not be determined until the "Cash Basis" was set.  The contracts provided a deadline for Timmermans to "set" the cash basis.

The contracts contained the following provision regarding extension of the delivery date:

> SELLER SHALL NOT BE PERMITTED TO ROLL THE FUTURES CONTRACT OR OTHERWISE EXTEND THE DELIVERY PERIOD EXCEPT WITH BUYER'S PRIOR WRITTEN CON[S]ENT.  UNDER NO CIRCUMSTANCES WILL SELLER BE PERMITTED TO ROLL THE FUTURES CONTRACT TO A NEW CROP YEAR.  THIS CONTRACT MAY BE ROLLED FORWARD ONE TIME WITHIN THE MARKET YEAR.

(Id., emphasis in originals.)

The term "roll" is not defined in the contracts.  It is likely that it means to "move forward" in time.  The extension of the delivery date would appear to have the effect of changing the final purchase price, and would seem to cause Farmers Coop to change its hedge position to protect itself.

On the strength of the contracts, Farmers Coop entered into its futures contracts.  Farmers Coop was unaware of Timmermans' bankruptcy at the time the petition was filed.  Farmers Coop asserts it was not aware of the bankruptcy case until after the issuance of the last grain contract (doc. 257, Motion ¶ 3).  It

appears that the "priced" contract no. 16698 was entered into on February 13, 2007, after Timmermans' conversion to chapter 7. See Motion, Exhibit J.

Timmermans and Farmers Coop entered into nine "Basis Later Grain Contracts" from June 21, 2005 to September 28, 2006 and a "Priced Contract" on February 13, 2007.  All are identified one way or another in the exhibits.  Timmermans did not assume any of the contracts, and breached all of them.  The trustee did not assume any.

Farmers Coop bases its claim for administrative expense allowance on only five of the contracts: exhibits F, G, H, I and J (contract 16698).  Exhibits A, B, C, D, and E all appear to be pre-petition contracts which were executory at the time the chapter 12 was filed.  None of those was assumed.  Farmers Coop does not seek an administrative claim based on those contracts.

Four of the five contracts which are the basis of the administrative expense claim are contracts which involved the Timmermans' extension or "rolling" of the delivery date.  The fifth contract was entered into by Timmermans after the conversion to chapter 7, and appears to be involved as a credit in the calculation of Farmers Coop's damages.  For the four rolled contracts, the court will show the original contract number and issue date, the date of the rolling agreement and its contract number.  I will also show the damages claimed by Farmers Coop as to each of these contracts:

10

| Exh. | Contract No. | Date Issued | Date Rolled | New Contract No. | Damages |
|---|---|---|---|---|---|
| F | 5479 | 1/25/06 | 7/10/06 | 5909 | $22,950 |
| G | 5189 | 6/21/05 | 9/28/06 | 6003 | 5,475 |
| H | 5573 | 2/17/06 | 9/28/06 | 6004 | 5,275 |
| I | 5588 | 2/24/06 | 9/28/06 | 6005 | 5,125 |
| | | | | Total damages | $38,825 |
| J | 16698 | 2/13/07 | | Gain | − 1,300 |
| | | | | Claim | $37,525 |

(Doc. 257, Motion and exhibits.)

Farmers Coop bases its claim for administrative expenses on the agreements between Timmermans and Farmers Coop that the delivery dates be rolled or extended on the four contracts. New contract numbers were issued. New delivery dates were selected. Thus, Farmers Coop contends that these were new contracts entered into with the debtor-in-possession and therefore its claim passes the first test for being an administrative expense.

The proposed consent order identifies these "new contracts" as the "Chapter 12 Grain Contracts," and "finds" that they "were entered into and signed by Dean Timmerman as debtor-in-possession at a time in which the Chapter 12 case was pending, as shown by the dates on the contracts and the sworn testimony of Dean Timmerman."

Farmers Coop contends that the court is bound by this "finding of fact." There certainly are facts relevant to this issue: Timmermans and Farmers Coop entered into Basis Later Grain Contracts prior to Timmermans' bankruptcy and the contracts

11

contained terms related to bushels and delivery dates.  The contracts also provided for a future calculation of the purchase price, and acknowledged that Farmers Coop would protect itself by entering into hedge contracts.  The contracts also provided for a one-time extension of the delivery date during the market year.  The extension would be at the request of Timmermans, but only with the prior written consent of Farmers Coop.  For four contracts (exhibits F, G, H, and I) extension was requested and granted.  In each of the four cases, a separate document was executed to accomplish the change in the delivery date.  There was no change in the type or quantity of grain, the identity of the parties, the market year, or any other terms.  There was a change in the delivery date and the date for seller to set the cash basis.  Thus the purchase price would change.

The proposed finding in the consent order that the written agreements to "roll" the delivery dates were new contracts, is a conclusion of law, not a finding of fact.  I am not bound by the stipulation in that regard.

One could conclude that the documents executed to extend the delivery dates (exhibits F, G, H, and I) are modifications of existing, pre-petition executory contracts, which were not assumed during either the chapter 12 or the chapter 7 cases, but rather were deemed rejected during the chapter 7 case.  Or one might conclude that extensions of the delivery dates were contemplated aspects of performance of the contract--the

selection of the delivery dates. The pre-petition executory contracts contemplated such selections. Nowhere in those pre-petition contracts is it stated that they would be canceled or terminated upon the rolling of the delivery date. Nothing in the extension documents indicated the original agreement was canceled. A pre-petition contract priced post-petition may be an executory contract not entitled to administrative priority. See In re R.F. Cunningham & Co., Inc., 2007 WL 1725222 (Bankr. E.D. N.Y. 2007).

I will assume that basis-later grain contracts benefit the operation of the estate when entered into by a debtor-in-possession. But because the contracts relied upon by Farmers Coop may be unassumed pre-petition executory contracts, neither the trustee nor Farmers Coop has proven to the court that Coop will succeed on the merits of its claim.

If the trustee is successful, collection of the claim is not an issue. Farmers Coop's claim will be treated as unsecured, rather than as a priority claim. This would benefit unsecured creditors in the case. Although the issue is complex, it is unlikely that trial of the matter would require significant discovery or a long, complex trial.

Importantly, although the trustee submits the compromise, the estate does not benefit much from it. Farmers Coop seeks allowance of an administrative claim in the amount of $37,525.00. If it is unsuccessful, it has no administrative claim.

Nonetheless, the trustee is willing to see the claim approved in that amount. Despite that a successful outcome for Farmers Coop is not certain, Coop appears to offer nothing to the trustee other than the elimination of trial expense, an expense which Farmers Coop would also have to bear. Because the settlement offers little or no benefit to the estate, I find it is not in the estate's best interest.

The trustee has failed to meet his burden of proof that the settlement is in the best interest of the estate and does not fall below the lowest point in the range of reasonableness.

IT IS ORDERED that the motion for approval of the consent order is denied. Judgment shall enter accordingly.

DATED AND ENTERED  December 14, 2007

/s/ W.L. Edmonds

William L. Edmonds, Chief Bankruptcy Judge